## 68923. WHITE v. OWENS et al.
### (323 SE2d 167)

DEEN, Presiding Judge.

Until her death in 1982 Lula Owens, appellee, was life tenant in 177 acres of Laurens County land. Appellant Grady White, Mrs. Owens' brother, held the remainder interest in the property and owned outright an adjoining tract. Appellees Lemmie and Louie Owens are Lula Owens' sons and owners of small tracts adjacent to the subject property. Appellees H. B. Thompson and T. G. Thompson are purchasers of timber on the 177-acre subject property formerly belonging to Mrs. Owens and now belonging to appellant White.

In October of 1980, at the request of Mrs. Owens and her attorney, Forest Resource Consultants, Inc. (FRC), prepared a plan for the cutting of timber on the property. FRC estimated the total value of the timber at $150,720. In the following December, Mrs. Owens entered a contract with the H. V. and T. G. Thompson Timber Company (Thompson) for the sale of $119,288 worth of timber.

Thompson began cutting the timber in January 1981. White immediately filed a complaint, seeking forfeiture of the life estate on the basis of waste, conversion of timber, and trespass. A temporary restraining order was issued forbidding appellees to do further cutting and removing of timber. All proceeds from the sale of timber already cut were deposited into the registry of the court.

The case came to trial in July 1983. Prior to the jury's arriving at a verdict, the parties reached a consent settlement agreement, the details of which were read into the record in open court and were subsequently incorporated in the judgment. Under the settlement agreement, White agreed to have the timber cut according to the original plan prepared by FRC, according to which, at the conclusion of the cutting, $26,361 worth of timber would be left on the property. White was to be paid one-half of the $119,288 contract price and was to pay for any desired site preparation and replanting. Taxes and court costs were to be equitably divided, and Mrs. Owens' sons were to convey to White, for prices specified in the agreement, clear title to the small tracts which they owned contiguous to (or, technically, included within) the subject property.

Mr. Humphries of FRC stated in court that his original projection of $26,361 was made prior to the timber's being marked for cutting, and that after it was actually marked, he had raised his estimate to $32,000. Humphries further stated that as of the date of trial the 1981 estimate should be updated to a value of between $35,000 and $40,000.

Subsequent to the trial White's attorney contacted Al Jacobs, an agent of Thompson, in an effort to sell the timber remaining on the property. Jacobs estimated at $22,000 the value of the timber which would remain after the cutting.

In October 1983 White filed a motion to set aside the consent settlement agreement or, in the alternative, to set aside the judgment. White claimed that his agreement to the settlement was based on a statement by Humphries that there would be $37,000 worth of timber left after the cutting, and that, had he known the value of the timber was less than $37,000, he would not have consented to settling the case. In an affidavit filed by defendants in opposition to appellant's motion to set aside, Humphries stated that the fair market value of the timber was approximately $30,000 to $32,000, that he would expect offers to range from $24,000 to $37,000, and that he was not surprised at Jacobs' offer of $22,000.

White's motion was overruled and judgment entered in conformity with the settlement agreement. He appeals from this judgment, enumerating as error the overruling of his motion, and alleging fraud in the inducement. *Held*:

Appellant alleges that in deciding to enter into a settlement he relied upon a statement by Humphries of FRC that the timber remaining after the agreed-upon cutting would be $37,000; and that because Jacobs, a Thompson agent, made a lower appraisal than Humphries, the testimony of Humphries constituted fraudulent inducement. Humphries' testimony was actually that different evaluations of the timber's value might cover a range from $24,000 to $40,000. There is absolutely no evidence that appellant was coerced into accepting as valid the appraisal of either Humphries or Jacobs, or that there was any reason that he could not have obtained an independent appraisal.

Moreover, appellant's counsel, in White's presence, stated in open court that the terms of the proposed settlement were agreeable to his client, and memorialized the same by having it reduced to writing and incorporated in the judgment. Agreements made by an attorney pertaining to his client's cause of action are binding upon the client, absent fraud, collusion, or express prohibition of such an agreement. OCGA § 15-19-5; *Davis v. Davis*, 245 Ga. 233 (264 SE2d 177) (1980); *Reece v. McCormack*, 188 Ga. 665 (4 SE2d 575) (1939); *Howell v. Howell*, 188 Ga. 803 (4 SE2d 835) (1939). See also *Equitable Gen. Ins. Co. v. Johnson*, 166 Ga. App. 215 (303 SE2d 757) (1983); *Lennon*

*v. Aeck Assoc.*, 157 Ga. App. 294 (277 SE2d 289) (1981). If, as in the instant case, the agreement is made in open court, there is no requirement even that it be in writing. *Wilson v. State*, 145 Ga. App. 315 (244 SE2d 355) (1978); see also *Davenport v. Davenport*, 218 Ga. 475 (128 SE2d 772) (1962).

Our examination of the record reveals no evidence that fraud, actual or constructive, was perpetrated upon appellant in inducing him to sign the settlement agreement; that he was subjected to pressure of any kind; or that for any other reason the settlement agreement should not be considered valid and binding.

*Judgment affirmed. McMurray, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 4, 1984 —
REHEARING DENIED OCTOBER 15, 1984

*J. Stanley Smith, Jr.*, for appellant.
*W. W. Larsen, Jr., Eric L. Jones*, for appellees.